# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

DEREK THOMAS,

Plaintiff-Appellant,

v.

JACQUELINE CARMICHAEL, *et al.*,

Defendants-Appellees.

On Appeal from the United States District Court
for the Southern District of Indiana, Terre Haute Division,
No. 2:21-cv-00160-JRS-MKK (Sweeney, J.)

## BRIEF FOR APPELLEES

BRIAN M. BOYNTON
   *Principal Deputy Assistant*
   *Attorney General*

SARAH CARROLL
JAYNIE LILLEY
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7321*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-3542*

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION ............................................................ 1

STATEMENT OF THE ISSUES .............................................................. 1

STATEMENT OF THE CASE ................................................................ 2

    A.   Legal Background ................................................................ 2

    B.   Factual Background ............................................................ 7

    C.   Prior Proceedings ............................................................. 16

SUMMARY OF ARGUMENT .............................................................. 20

STANDARD OF REVIEW .................................................................. 22

ARGUMENT .................................................................................. 23

I.    The District Court Properly Declined to Extend *Bivens* to Plaintiff's Claims. ...................................................................... 23

    A.   Courts Must Exercise Extreme Caution Before Extending *Bivens* to New Contexts. .................................... 23

    B.   The District Court Properly Declined to Extend *Bivens* Liability for Plaintiff's Failure-to-Protect Claims. ............... 28

    C.   The District Court Correctly Concluded that *Bivens* Liability Is Not Available for Plaintiff's Novel Inadequate Medical Care Claims. ........................................ 34

II.   The District Court Correctly Held that Defendants Were Entitled to Qualified Immunity on the Medical Care Claims. ...... 40

    A.   Plaintiff's Failure to Satisfy His Burden on Qualified Immunity Should Not Be Excused. ....................................... 41

B. The District Court's Conclusion that Defendants Are Entitled to Qualified Immunity Was Not Plain Error, Even If the Issue Were Properly Preserved.......................... 48

  1. Plaintiff has failed to show that defendants were deliberately indifferent to his medical needs. ............. 50

  2. Plaintiff has not shown that any of the defendants violated clearly established law. ............... 56

CONCLUSION ......................................................................... 59

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Anderson v. Creighton,*
   483 U.S. 635 (1987) ............................................................... 38

*Arnett v. Webster,*
   658 F.3d 742 (7th Cir. 2011) ................................. 48, 49, 52, 54, 55, 56

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) ............................................................... 48

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................. 2

*Berry v. Peterman,*
   604 F.3d 435 (7th Cir. 2010) ................................................... 53

*Bianchi v. McQueen,*
   818 F.3d 309 (7th Cir. 2016) ................................................... 19

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
   403 U.S. 388 (1971) ......................................................... 1, 2, 3

*Bulger v. Hurwitz,*
   62 F.4th 127 (4th Cir. 2023) ................................... 27, 30, 31, 37

*Burks v. Raemisch,*
   555 F.3d 592 (7th Cir. 2009) ................................................... 52

*Bush v. Lucas,*
   462 U.S. 367 (1983) ............................................................... 32

*Carlson v. Green,*
   446 U.S. 14 (1980) ............................................................. 3, 20

*Chappell v. Wallace,*
   462 U.S. 296 (1983) ............................................................... 37

*Ciarpaglini v. Saini,*
    352 F.3d 328 (7th Cir. 2003) ............................................................ 55

*CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc.,*
    882 F.3d 692 (7th Cir. 2018) ............................................................ 44

*Conley v. Birch,*
    796 F.3d 742 (7th Cir. 2015) ............................................................ 57

*Correctional Servs. Corp. v. Malesko,*
    534 U.S. 61 (2001) ....................................................... 2, 23, 24

*Davis v. Passman,*
    442 U.S. 228 (1979) .............................................................. 3

*Del Raine v. Williford,*
    32 F.3d 1024 (7th Cir. 1994) ............................................................ 49

*Deppe v. Tripp,*
    863 F.2d 1356 (7th Cir. 1988) ............................................................ 43

*District of Columbia v. Wesby,*
    583 U.S. 48 (2018) ............................................................ 57

*Egbert v. Boule,*
    596 U.S. 482 (2022) ............................................... 4, 20, 23, 24, 32, 38

*Estate of Miller by Chassie v. Marberry,*
    847 F.3d 425 (7th Cir. 2017) ...................................................... 4, 35, 51

*Estelle v. Gamble,*
    429 U.S. 97 (1976) ............................................................ 56

*Farmer v. Brennan,*
    511 U.S. 825 (1994) ....................................................... 48, 49

*Findlay v. Lendermon,*
    722 F.3d 895 (7th Cir. 2013) ............................................................ 57

*Fisher v. Hollingsworth,*
  115 F.4th 197 (3d Cir. 2024) ........................................28, 31

*Hacker v. Dart,*
  62 F.4th 1073 (7th Cir. 2023)...................................45, 46, 47

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ...............................................................48

*Henry v. Hulett,*
  969 F.3d 769 (7th Cir. 2020) ..............................42, 43, 44, 45

*Hernandez v. Mesa,*
  589 U.S. 93 (2020) ......................................................4, 29, 34

*Hoffman v. Preston,*
  No. 20-15396, 2022 WL 6685254 (9th Cir. Oct. 11, 2022) ..................27

*Lewis v. McLean,*
  864 F.3d 556 (7th Cir. 2017) ...............................................58

*Locke v. Haessig,*
  788 F.3d 662 (7th Cir. 2015) ...............................................22

*Looper v. Jones,*
  No. 22-40579, 2023 WL 5814910 (5th Cir. Sept. 8, 2023) ...................26

*Massey v. Helman,*
  196 F.3d 727 (7th Cir. 1999) .................................................5

*Miller v. Chicago Transit Auth.,*
  20 F.4th 1148 (7th Cir. 2021)...............................................20

*Miller v. Harbaugh,*
  698 F.3d 956 (7th Cir. 2012) ...............................................54

*MMG Fin. Corp. v. Midwest Amusements Park, LLC,*
  630 F.3d 651 (7th Cir. 2011) ...............................................22

*Mullenix v. Luna,*
577 U.S. 7 (2015) ..................................................................... 57

*Norfleet v. Webster,*
439 F.3d 392 (7th Cir. 2006) ................................................ 56

*Oates v. Discovery Zone,*
116 F.3d 1161 (7th Cir. 1997) .............................................. 41

*Rabin v. Flynn,*
725 F.3d 628 (7th Cir. 2013) .......................................... 22, 40

*Rowland v. Matevousian,*
No. 23-1343, 2024 WL 4821774 (10th Cir. Nov. 19, 2024) ................. 36

*Sargeant v. Barfield,*
87 F.4th 358 (7th Cir. 2023) .................... 4, 23, 25, 26, 27, 28, 37, 39, 40

*SEC v. Yang,*
795 F.3d 674 (7th Cir. 2015) ................................................ 43

*Smith v. Finkley,*
10 F.4th 725 (7th Cir. 2021) ................................................ 40

*Spiegel v. Cortese,*
196 F.3d 717 (7th Cir. 1999) ................................................ 40

*Spruill v. Gillis,*
372 F.3d 218 (3d Cir. 2004) ................................................. 49

*Tate v. Harmon,*
54 F.4th 839 (4th Cir. 2022) ................................................ 25

*Teumer v. General Motors Corp.,*
34 F.3d 542 (7th Cir. 1994) ................................................. 44

*Tuduj v. Newbold,*
958 F.3d 576 (7th Cir. 2020) ............................................... 20

vi

*Turner v. Safley*,
   482 U.S. 78 (1987) ................................... 33

*Vance v. Rumsfeld*,
   701 F.3d 193 (7th Cir. 2012) ....................... 52

*Wilkie v. Robbins*,
   551 U.S. 537 (2007) ................................ 32

*Ziccarelli v. Dart*,
   35 F.4th 1079 (7th Cir. 2022) ...................... 43

*Ziglar v. Abbasi*,
   582 U.S. 120 (2017) ................ 3, 3-4, 4, 23, 24, 25, 29, 31, 32

**Statutes:**

Civil Rights of Institutionalized Persons Act,
   Pub. L. No. 96-247, 94 Stat. 349 (1980) ............... 33

Federal Prison Oversight Act, H.R. 3019, 118th Cong. (2024) ...... 33

Prison Litigation Reform Act of 1995,
   Pub. L. No. 104-134, tit. VIII, §§ 801-810,
   110 Stat. 1321, 1321-66 to 1321-77 (1996) ............ 33
      18 U.S.C. § 3626 ................................. 32
      18 U.S.C. § 3626(i)(1) ........................... 38

Prison Rape Elimination Act of 2003,
   34 U.S.C. §§ 30301-30309 ......................... 6, 33

28 U.S.C. § 1291 ....................................... 1

28 U.S.C. § 1404(a) .................................. 16

28 U.S.C. § 1915(e)(2)(B)(ii) ......................... 46

28 U.S.C. § 1915A(a) ................................. 16

**Other Authorities:**

BOP:

*About Our Agency*,
    https://perma.cc/LF37-DXWE .......................................................... 6, 39

Program Statement 1330.18,
    *Administrative Remedy Program* (Jan. 6, 2014) ................................ 7

Program Statement 5324.12,
    *Sexually Abusive Behavior Prevention and*
    *Intervention Program* (June 4, 2015) ................................................ 6

Program Statement 6010.05,
    *Health Services Administration* (June 26, 2014) ............................... 5

Program Statement 6027.02,
    *Health Care Provider Credential Verification,*
    *Privileges, and Practice Agreement Program* (Oct. 12, 2016) ............. 5

Program Statement 6031.04,
    *Patient Care* (June 3, 2014) ........................................................... 5, 6

## STATEMENT OF JURISDICTION

The jurisdictional statement of plaintiff-appellant, Derek Thomas, is not complete and correct. Plaintiff, a Federal Bureau of Prisons (BOP) inmate, sued several employees of the federal prison in Terre Haute, Indiana. Am. Compl., R. 144. Jurisdiction in the district court was premised on allegations of Eighth Amendment violations against individual defendants based upon *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *See* D.Ct. Screening Order, R. 143, at 3-4.

On July 24, 2023, the district court granted summary judgment to defendants and entered final judgment. D.Ct. Op., R. 304; Final J., R. 305. On August 7, 2023, plaintiff filed a timely Notice of Appeal. Notice of Appeal, R. 310. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Plaintiff, an inmate formerly housed in the Federal Correctional Complex in Terre Haute (FCC Terre Haute), sought individual-capacity damages under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), from several prison

employees, alleging that they violated the Eighth Amendment by failing to protect him from assault by another inmate and by providing inadequate psychological and medical care after the assaults.

The questions presented are:

(1) Whether the district court correctly concluded that there is no *Bivens* remedy for plaintiff's claims.

(2) Whether the district court correctly concluded that defendants were entitled to qualified immunity on plaintiff's inadequate-medical-care claims if his waiver of that issue can be excused.

## STATEMENT OF THE CASE

A. Legal Background

1. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 389 (1971), the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). *Bivens* held that, despite the absence of a statutory cause of action, federal law-enforcement officials could be sued for money damages for conducting a warrantless search

and arrest in a person's home, accompanied by the excessive use of force, in violation of the Fourth Amendment. *Bivens*, 403 U.S. at 389. The Court has approved an implied damages remedy under the Constitution only two other times, in *Davis v. Passman*, 442 U.S. 228 (1979), for an equal-protection violation involving sex discrimination in congressional-staff employment, and in *Carlson v. Green*, 446 U.S. 14 (1980), for an Eighth Amendment violation involving the failure to treat an inmate's asthma, resulting in his death.

The Supreme Court's decision in *Ziglar v. Abbasi*, 582 U.S. 120 (2017), makes clear that the continued expansion of *Bivens* to "any new context or new category of defendants" is a "disfavored judicial activity." *Id.* at 135 (quotation marks omitted). *Abbasi* held that a court must apply a two-part test to determine whether it can recognize a cause of action against federal officials in their personal capacities. First, a court determines whether the claim arises in a "new *Bivens* context" by determining whether the case differs "in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Id.* at 139. Second, the court must consider whether any special factors counsel hesitation before creating the new damages remedy in that context. *Id.*

at 140.  "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy."  *Egbert v. Boule*, 596 U.S. 482, 492 (2022) (quotation marks omitted).  In asking whether special factors counsel hesitation, the court gives important weight to "'separation-of-powers principles'" and "consider[s] the risk of interfering with the authority of the other branches."  *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020) (quoting *Abbasi*, 582 U.S. at 135). Applying this framework, this Court recently held that a federal prisoner like plaintiff cannot bring a *Bivens* action alleging that prison officials failed to protect him from a violent attack by his cellmates. *Sargeant v. Barfield*, 87 F.4th 358, 360 (7th Cir. 2023).

2.  The Bureau of Prisons is organized with a specific "division of labor" and "chain of command" among BOP staff, administered according to various BOP policies and Program Statements.  *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 428, 429 (7th Cir. 2017). The Bureau of Prisons maintains "[l]ines of authority and accountability" in the provision of health care to inmates that reflect the fact that "[p]roviding health care within a correctional environment presents unique challenges not encountered by practitioners

elsewhere." *See* BOP, Program Statement 6010.05, *Health Services Administration* 2 (June 26, 2014).  BOP policy prescribes an organizational chart for its health services division, setting forth responsibilities and authorities and delineating roles for BOP medical staff, including Clinical Directors, mid-level practitioners, charge nurses, staff nurses, and emergency medical technicians.  *Id.* at 3-6, 7-14; *see also Massey v. Helman*, 196 F.3d 727, 730 (7th Cir. 1999) (describing the "hierarchy of prison officials who administer medical treatment to federal prisoners" under the predecessor to the Program Statement).  In addition, the roles of BOP medical and other staff are carefully prescribed along with a chain of command for exercising various authorities.  *See, e.g.*, BOP, Program Statement 6027.02, *Health Care Provider Credential Verification, Privileges, and Practice Agreement Program* 7-11 (Oct. 12, 2016).

The provision of medical care to the approximately 150,000 inmates in Bureau of Prisons' care involves a complex system that balances medical judgments, resource-allocation, security, and timing decisions for treatment in BOP facilities by BOP medical providers as well as referrals for treatment by medical providers outside BOP facilities.

That system is likewise governed in part by BOP Program Statements, which set forth different processes for review and approval of treatments for different conditions. *See* BOP, *About Our Agency*, https://perma.cc/LF37-DXWE; BOP, Program Statement 6031.04, *Patient Care* 7-8, ¶ 8 (June 3, 2014) (BOP Program Statement 6031.04). In addition, BOP requires each institution to have written surgical policies and procedures; sets requirements for triage of services within an institution; and imposes requirements for intake screening, physical and mental health examinations, and ordering appropriate laboratory and diagnostic testing. BOP Program Statement 6031.04, at 21-24, 30, ¶¶ 17-19, 21-22.

Similarly, BOP policy provides procedures for reports of inmate misconduct, including allegations of physical and sexual assault. BOP's special investigative staff conducts investigations into reports of inmate misconduct. And BOP has implemented protocols for investigations into reports of sexual assault pursuant to the Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309; *see also* BOP, Program Statement 5324.12, *Sexually Abusive Behavior Prevention and Intervention Program* 1, 2, 37-43 (June 4, 2015) (providing guidelines to

"[d]ocument, report, and investigate reported incidents" of sexual abuse of inmates). BOP also investigates allegations of physical abuse raised by inmates in administrative remedies. *See* BOP, Program Statement 1330.18, *Administrative Remedy Program* 10 (Jan. 6, 2014); *see also id.* 12-16 (remedial procedures for reporting allegations under the Prison Rape Elimination Act).

B. Factual Background

The claims in this suit arise from plaintiff's allegations that his cellmate physically assaulted him several times in October and November of 2017 and sexually assaulted him in November 2017. *See* Thomas Dep., R. 274-1, at 28-29, 32, 40, 47, 54-64. Throughout the period when plaintiff alleges the assaults occurred, plaintiff was under the regular care and examination of BOP psychological and medical staff.

1. In mid-September 2017, plaintiff arrived at the Federal Correctional Institution (FCI), the medium-security facility at FCC Terre Haute. *See* Thomas Dep., R. 274-1, at 8. Plaintiff requested protective custody and was almost immediately placed in the Special Housing Unit at the FCI. *Id.* at 9-10; Baker Dep., R. 274-3, at 20-21.

Later that month, plaintiff reported to psychologist Dr. Jacqueline Carmicheal,[1] during her weekly rounds, that other inmates were putting items in his food and harassing and threatening him. Carmicheal Dep., R. 274-5, at 11, 42-43; *see* Clinical Record, R. 269-9. For his protection, plaintiff was moved to the Special Housing Unit at the U.S. Penitentiary, the high-security facility at FCC Terre Haute, the following day. Baker Dep., R. 274-3, at 21; *see* Quarters' History, R. 274-4.

On October 10, 2017, plaintiff became cellmates with an inmate, G.L., at the Special Housing Unit at the Penitentiary, and plaintiff contends that the cellmate began physically assaulting him on that day. Thomas Dep., R. 274-1, at 23-24, 28-29; Conner Dep., R. 274-8, at 34; *see also* Quarters' History, R. 274-4. Plaintiff alleges that on October 17, 2017, plaintiff's correctional counselor Tracy Joslyn escorted plaintiff to receive a phone call, after which plaintiff told correctional counselor Joslyn that his cellmate "has been kicking my ass." Thomas Dep., R. 274-1, at 32.

---

[1] Dr. Carmicheal's name is misspelled in the case caption, but the brief uses the corrected spelling.

In early November, plaintiff and the same cellmate were moved to the Special Housing Unit at the FCI, where they remained cellmates. Thomas Dep., R. 274-1, at 46; Baker Dep., R. 274-3, at 19. Plaintiff contends his cellmate physically assaulted him again shortly thereafter and further alleges that the cellmate again physically assaulted him on November 7 or 8. Thomas Dep., R. 274-1, at 32, 40, 47-49, 53-54. On November 15, the cellmate was temporarily removed from the cell he shared with plaintiff, and plaintiff did not protest or refuse when the cellmate returned. *Id.* at 54-56. Plaintiff alleges that the cellmate physically and sexually assaulted him that day after the cellmate returned to their cell. *Id.* at 54-55. On November 22, following plaintiff's alleged report to Dr. Carmicheal that his cellmate had assaulted him, the Special Investigative Service was notified of plaintiff's safety concerns.[2] Plaintiff was extracted from his cell,

---

[2] Plaintiff contends that around November 7 he had given Dr. Carmicheal a "cop-out" form informing her of the assaults but admits that he did not see her receive the form at that time. *See* Opening Br. 8. Dr. Carmicheal, however, was away from the institution this entire week at a training so she could not have received any cop-out that week. *See* Carmicheal Dep., R. 274-5, at 28-29. Nonetheless, plaintiff alleges that on November 22, Dr. Carmicheal told him that she had received the form about the November 7 and 8 attacks and that she then

*Continued on next page.*

separated from the cellmate, and questioned about the assault allegations.  *Id.* at 66-68.  Besides his reports to Dr. Carmicheal and correctional counselor Joslyn, plaintiff does not contend that he told any other BOP staff members that his cellmate was assaulting him.  *See id.* at 58-59; Baker Dep., R. 274-3, at 16.

Plaintiff contends that he suffered injuries to his face and abdomen, pain in various parts of his body, bloody stools, nightmares, night terrors, and anxiety.

2.  Throughout his time being housed in the Special Housing Units at both institutions with this cellmate, plaintiff was regularly seen and treated by medical and psychological staff, and numerous BOP administrative staff and other staff members conducted weekly rounds in those units.  *See* Thomas Dep., R. 274-1, at 34-35, 54; Baker Dep., R. 274-3, at 14-15.

Approximately eight days after plaintiff contends the first assault took place, plaintiff was seen twice by psychology staff members:  the Chief Psychologist conducted a routine review of plaintiff's placement in

provided this information to the Special Investigative Service.  Opening Br. 9.

10

the Special Housing Unit; and a psychology intern gave him therapeutic puzzles. Myers Decl., R. 269-22, ¶¶ 14-15; *see* Myers Attachs., R. 274-11, at 21-25. The Chief Psychologist noted that plaintiff voiced no psychological problems or complaints, was provided the opportunity for an interview with a psychologist, and appeared to have no mental health problems requiring immediate intervention. Myers Decl., R. 269-22, ¶ 15; *see* Myers Attachs., R. 274-11, at 25. The psychology intern gave plaintiff therapeutic puzzles again on two other days. Myers Decl., R. 269-22, ¶ 16; *see* Myers Attachs., R. 274-11, at 27-28. There are no allegations that plaintiff told either the Chief Psychologist or the intern that his cellmate had assaulted him at that time.

Plaintiff also admitted that he did not request medical treatment after the November 7 or 8 assault. Thomas Dep., R. 274-1, at 47-49, 53-54. During the period he was housed with this cellmate, plaintiff also received regular, routine medical care, including an injection every 14 days. *See* Wilson Decl., R. 269-20, ¶ 13; Wilson Attachs., R. 274-10, at 14-19. Plaintiff did not report the alleged assaults to the staff that administered his injection on these days. Thomas Dep., R. 274-1, at 80-84.)

Plaintiff's medical records reflect that Nurse Karl Norris examined plaintiff on the day he was extracted from his cell and separated from the cellmate. The records report finding no trauma, swelling, or bruising. Wilson Decl., R. 269-20, ¶ 14; Wilson Attachs., R. 274-10, at 21; Norris Decl., R. 269-17, ¶ 8. Plaintiff contends he has never met Nurse Norris or requested medical care from him. Thomas Dep., R. 274-1, at 73-74, 125.

Psychology staff also conducted three more Special Housing Unit reviews of plaintiff after he was separated from the cellmate, but plaintiff did not report psychological problems and had no mental health problems requiring psychological intervention. *See* Myers Decl., R. 269-22, ¶¶ 20, 24, 29; Myers Attachs., R. 274-11, at 39, 51, 63.

In mid-December 2017, plaintiff was seen by an outside rheumatologist and then evaluated by a BOP physician upon his return. The physician noted that plaintiff reported he was "doing well" and had no complaints; upon examination, plaintiff's skin was within normal limits and his abdomen was normal. Wilson Decl., R. 269-20, ¶ 17; Wilson Attachs., R. 274-10, at 26-31.

3. Following his November 22 removal from the cellmate, plaintiff alleges that he reported his physical injuries to each of the individual defendants. He alleges that defendants did not treat his injuries or report his injuries to medical staff and thus he did not receive adequate medical care for his injuries.

Plaintiff contends that he reported his injuries to his correctional counselor Joslyn on November 29 or 30 and requested medical care. Thomas Dep., R. 274-1, at 77. On December 22, plaintiff saw psychologist Dr. Carmicheal for a suicide risk assessment, during which she concluded that his acute suicide risk was low and recommended that he be seen for a follow up contact within the next two weeks. Carmicheal Dep., R. 274-5, at 16-18, 45-47; Suicide Risk Assessment, R. 274-7. Plaintiff contends that he reported his physical and sexual assaults but that she did not list the assaults in her report. *See* Thomas Dep., R. 274-1, at 86-87.

On December 19, 2017, plaintiff filed a grievance form outlining his allegations that he had been physically assaulted by his cellmate, and the Special Investigative Staff initiated an investigation. On January 1, 2018, Special Investigative Services Lieutenant Jamie Baker and the

on-call psychologist Dr. Erin Conner interviewed plaintiff about his allegations of assault. Thomas Dep., R. 274-1, at 91. Special Investigative Services Lieutenant Baker did not recall observing any injuries during this interview. Baker Dep., R. 274-3, at 22.

As the on-call psychologist, Dr. Conner also saw plaintiff for follow up from his previous suicide risk assessment. Conner Dep., R. 274-8, at 17-18; Clinical Notes, R. 269-14. Plaintiff denied current suicidal or homicidal ideation, plan, or intent, and exhibited no overt signs of psychosis or thought disorder. Clinical Notes, R. 269-14. Dr. Conner recommended that plaintiff be seen for additional follow up later. *Id.* Because plaintiff was housed in a different facility from the one to which Dr. Conner was assigned at the time, Dr. Conner was not involved in plaintiff's psychological treatment outside of these on-call duties.

In January 2018, plaintiff sent a letter reporting to an outside entity that he had been raped. Baker Dep., R. 274-3, at 24; Baker Decl., R. 269-5, ¶ 6. BOP then initiated the Prison Rape Elimination Act protocol, including an assessment by Nurse Corey Pointer. Baker Dep., R. 274-3, at 24; Pointer Decl., R. 269-18, ¶ 9. On exam, Nurse Pointer

found no scratches or bruising or injuries on his genitals or anus. Pointer Decl., R. 269-18, ¶ 9; Wilson Attachs., R. 274-10, at 37-39. Plaintiff alleges that he asked Nurse Pointer for referrals to a dentist and someone who could diagnose his alleged abdominal and shoulder injuries. Thomas Dep., R. 274-1, at 103.

On the same day, the staff psychologist saw plaintiff for a sexual abuse intervention, during which plaintiff did not appear in distress or in need of additional intervention. Myers Decl., R. 269-22, ¶ 27; Myers Attachs., R. 274-11, at 58. Soon thereafter, a BOP physician ordered several lab tests for plaintiff, including for sexually transmitted infections, all of which came back as "non-reactive." Wilson Decl., R. 269-20, ¶ 20; Wilson Attachs., R. 274-10, at 41-44.

On January 19, 2018, Nurse Matthew Worthington completed a follow-up assessment of plaintiff, finding no injuries or wounds. Worthington Decl., R. 269-19, ¶ 7; Wilson Attachs., R. 274-10, at 37-39. Plaintiff contends that he showed Nurse Worthington his broken teeth and bruising around his rib cage, but that Worthington did not physically examine him and told him that it was best to leave out

reports of bloody stool because it would slow his transfer to another facility. Thomas Dep., R. 274-1, at 93-95.

C.    Prior Proceedings

In September 2019, plaintiff filed a complaint in the U.S. District Court for the District of Massachusetts seeking individual-capacity damages from numerous BOP employees at several different institutions. The district court transferred the claims to the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

Plaintiff's complaint alleged that psychologist Dr. Carmicheal and correctional counselor Joslyn failed to protect him from the assaults. *See* D.Ct. Screening Order, R. 143, at 3-4. In addition, he alleged that after the assaults, Special Investigative Services Lieutenant Baker; correctional counselor Joslyn; psychologists Drs. Carmicheal and Conner; and registered nurses Norris, Pointer, and Worthington were deliberately indifferent to his serious medical needs. *Id.* at 3.

1. In June 2021, plaintiff filed an amended complaint against these individual defendants. Following an initial screening pursuant to 28 U.S.C. § 1915A(a), the court allowed the two sets of Eighth Amendment claims to proceed: (1) claims against psychologist Dr. Carmicheal and

correctional counselor Joslyn based on allegations that they failed to protect plaintiff from violence by another inmate; and (2) claims against Special Investigative Services Lieutenant Baker, correctional counselor Joslyn, nurses Norris, Pointer, and Worthington, and psychologists Drs. Carmicheal and Conner, based on allegations that they were deliberately indifferent to plaintiff's serious medical needs. The district court's order explained that the following allegations were allowed to proceed:

> Between November 2017 and January 2018 Mr. Thomas asked for medical treatment during meetings with six staff members: Ms. Joslyn, Ms. Carmich[ea]l, Psychologist Erin Conner, SIS Officer Jamie Baker, Nurse Mathew Worthington, and Nurse Corey Pointer. He told them he was suffering serious injuries due to his attacks, including insomnia, anxiety, paranoia, thoughts of suicide, abdominal pain, broken teeth, and blood in his stool. No one recorded his symptoms or reported them to medical practitioners who could provide the treatment he needed. Nurse Pointer did examine Mr. Thomas, but he intentionally humiliated Mr. Thomas by examining his genitals in front of three officers instead of in private.

D.Ct. Screening Order, R. 143, at 3. The district court subsequently appointed counsel to represent plaintiff.

2. Defendants moved for summary judgment on all of plaintiff's claims, asserting qualified immunity and other defenses. Plaintiff, by

appointed counsel, filed a response to the motion for summary judgment, which plaintiff initially attempted to "disavow." Mot. for Extension, R. 291, at 4. The district court then gave plaintiff 16 days to determine whether he wished to proceed with his counsel's summary judgment response or file his own response. Order, R. 295, at 2. Plaintiff then affirmatively "verified that he wishe[d] to proceed with recruited counsel's response" to the court. Order, R. 302, at 1.

3. The district court granted summary judgment to defendants. D.Ct. Op., R. 304 at 1. First, the court held that plaintiff's failure-to-protect claims against psychologist Dr. Carmicheal and correctional counselor Joslyn arose in a new *Bivens* context and that special factors counseled against expanding the *Bivens* remedy to them. D.Ct. Op., R. 304 at 12-17.

The court also granted summary judgment to defendants on plaintiff's claims for inadequate medical care, holding that defendants were entitled to qualified immunity. The court observed that once defendants raised qualified immunity as a defense, plaintiff bore the burden of overcoming that defense by showing that he "has alleged a deprivation of a constitutional right" and that "the right at issue was

clearly established at the time and under the circumstances presented."

D.Ct. Op., R. 304 at 18 (quoting *Bianchi v. McQueen*, 818 F.3d 309, 319

(7th Cir. 2016)). The court concluded that plaintiff "simply has not met

that burden." D.Ct. Op., R. 304 at 19. While plaintiff had arguably

challenged the contention that he had not stated a claim for an Eighth

Amendment violation, the court reasoned that plaintiff had not shown

that defendants had violated clearly established law and had, indeed,

failed to offer any argument at all on that point. D.Ct. Op., R. 304 at

18-19 ("[A]s Defendants note in their reply, Mr. Thomas did not address

their qualified immunity argument at all in his response brief.").

The court also held in the alternative that plaintiff had failed to state

a claim for deliberate indifference to his serious medical needs. D.Ct.

Op., R. 304 at 19 ("Even if the qualified immunity issue were not

determinative as to the medical-care claims, the Court would dismiss

them."). The court reasoned that plaintiff's claims arose in a new

context because unlike the claims in *Carlson,* plaintiff's claims involved

more "common" claims for "non-emergency" care and that the

availability of alternative remedies precluded extending *Bivens* to

plaintiff's novel claims. D.Ct. Op., R. 304 at 19-21

4. Plaintiff appealed. After the parties had completed initial briefing, this Court struck the briefs,[3] recruited appellate counsel for plaintiff, and ordered the parties to submit new briefing. *See* Order, July 2, 2024. The Court ordered the parties to "address, in addition to any argument that the parties deem appropriate . . . : (1) whether, in the interests of justice, this court should forgive the failure of Thomas's recruited counsel in the district court to address the defendants' qualified-immunity defense; and (2) whether, under *Egbert v. Boule*, 596 U.S. 482, 492 (2022), Thomas's deliberate-indifference claims present a 'new' *Bivens* context materially distinguishable from *Carlson v. Green*, 446 U.S. 14 (1980)." Order, July 2, 2024 (citation omitted).

## SUMMARY OF ARGUMENT

The district court correctly rejected plaintiff's *Bivens* failure-to-protect and inadequate medical care claims.

---

[3] We cite to the opening brief filed for plaintiff by appellate counsel as "Opening Br. __." Because his initial appellate brief was struck pursuant to this Court's order, plaintiff has waived any argument not raised in the opening brief filed by appellate counsel. *See Miller v. Chicago Transit Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) ("[A]rguments not raised in an opening brief are waived[.]" (quoting *Tuduj v. Newbold*, 958 F.3d 576, 579 (7th Cir. 2020) (per curiam))).

First, the court properly declined to extend *Bivens* to allow plaintiff to seek monetary damages from individual BOP employees based on his novel theories. Plaintiff's failure-to-protect claim is squarely foreclosed under this Court's precedent and would fail under the Supreme Court's two-step framework in any event. Plaintiff's inadequate medical care claims—which seek to hold individual BOP employees liable for failing to provide care that they were not authorized to provide—arise in a new context, thus implicating and challenging systemic conditions in BOP's management of medical conditions within the inmate population. And multiple special factors—such as judicial intrusion into BOP's management of medical care, the legislative attention paid to inmate care and reporting of abuse, and the availability of alternative remedial schemes—preclude recognition of a *Bivens* remedy in this context.

Second, even assuming plaintiff could establish a *Bivens* cause of action in this case, the district court correctly concluded in the alternative that the individual defendants were entitled to qualified immunity on plaintiff's inadequate medical care claims. Plaintiff's failure to contest qualified immunity should not be excused, but even if he were allowed to challenge defendants' entitlement to qualified

immunity for the first time on appeal, he has not satisfied his burden. His allegations provide no basis for concluding that the individual defendants here deliberately disregarded his medical needs; he has not shown that defendants had the authority to address his medical needs. On the contrary, they were entitled to rely on the medical care provided by BOP's medical providers. To the extent that plaintiff disagrees with treatments provided, his disagreement in no way demonstrates any culpability that could support his Eighth Amendment allegations. Significantly, plaintiff has not shown that any of the individual defendants have violated clearly established law.

## STANDARD OF REVIEW

This Court reviews the district court's grant of summary judgment de novo, construing all facts in the light most favorable to the non-moving party. *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011); *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013). The Court may affirm the grant of summary judgment on any ground supported by the record. *See Locke v. Haessig*, 788 F.3d 662, 666 (7th Cir. 2015).

**ARGUMENT**

## I. The District Court Properly Declined to Extend *Bivens* to Plaintiff's Claims.

### A. Courts Must Exercise Extreme Caution Before Extending *Bivens* to New Contexts.

1. Federal courts have limited authority "to imply a new constitutional tort[] not expressly authorized by statute." *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). The Supreme Court has recently emphasized that creating a *Bivens* remedy is a "'disfavored' judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017); *see also Egbert v. Boule*, 596 U.S. 482, 491 (2022). This Court has explained that following *Egbert*, a court must compare a claim to "the three recognized *Bivens* precedents to see if it arises in a new context." *Sargeant v. Barfield*, 87 F.4th 358, 365 (7th Cir. 2023). "[E]ven a modest extension of an existing context is all but forbidden." *Id.* at 366 (quotation marks omitted); *see also Egbert*, 596 U.S. at 490-91 (describing the only three contexts in which the Supreme Court has recognized a *Bivens* cause of action).

Indeed, a court cannot extend *Bivens* to a new context even based solely on "'parallel circumstances'" with the facts in the three recognized *Bivens* contexts; the claims must also "satisf[y] the 'analytic framework'

prescribed by the last four decades of intervening case law." *Egbert*, 596 U.S. at 501 (quoting *Abbasi*, 582 U.S. at 139). *Egbert*, for example, held that while that case and *Bivens* itself involved similar allegations of excessive force, those "superficial similarities are not enough to support the judicial creation of a cause of action." *Id.* at 495. The reluctance to extend *Bivens* is rooted in constitutional concerns. "[I]t is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation." *Abbasi*, 582 U.S. at 133.

Separation-of-powers concerns are heightened when the asserted "claims would call into question the formulation and implementation of a general policy," even if the claims are "confined to the conduct of a particular Executive Official in a discrete instance." *Abbasi*, 582 U.S. at 141. The purpose of a *Bivens* damages remedy is to "deter[] the unconstitutional acts of individual officers," not the "conduct of a policymaking entity." *Malesko*, 534 U.S. at 71; *see Abbasi*, 582 U.S. at 140-41. Accordingly, a case may present a new context from the three the Supreme Court has recognized, despite factual similarities, where

that new claim presents a novel "risk of disruptive intrusion by the Judiciary into the functioning of other branches" or requires the examination of different "judicial guidance as to how an officer should respond to the problem or emergency to be confronted." *Abbasi*, 582 U.S. at 139-40 (explaining that such "differences . . . are meaningful enough to make a given context a new one"); *see Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022) (declining to expand *Bivens* to what would amount to a "broad-based, systemic claim" even if the plaintiff's challenges involved discrete acts or decisions). Those principles apply with full force here: as explained at more length below, although plaintiff seeks to hold individual BOP employees personally liable for the care he received, his *Bivens* claim is at its essence a challenge to the systemic provision of medical care by BOP and attendant division of responsibilities.

2. In *Sargeant*, 87 F.4th at 360, this Court held that a federal prisoner cannot bring a *Bivens* action for violations of the Eighth Amendment arising from allegations that a prison official failed to protect him from violent attacks by his cellmates. The Court held that a *Bivens* remedy was not available for an inmate's claims that a prison

official "placed him with cellmates she knew were violent . . . [and that] the cellmates attacked him." *Id.* at 362, 368-69.

The Court first explained that the case presented a new context from the three recognized *Bivens* contexts. *Sargeant*, 87 F.4th at 365-68. The Court emphasized that the plaintiff's claims presented a different and significant risk of intrusions into BOP functions: "[r]ecognizing failure-to-protect claims against prison officials responsible for cell assignments under *Bivens* will invariably implicate housing policies, which factor in a sensitive mixture of things we are ill-positioned to assess—a prison's determinations about safety, discipline, and resources." *Id.* at 367 (rejecting the argument that "no such risk exists because his claim challenges the rogue actions of a rank-and-file official, not the Bureau of Prisons' policies"); *see also Looper v. Jones*, No. 22-40579, 2023 WL 5814910, at *2 (5th Cir. Sept. 8, 2023) (per curiam). Even though the Court might consider the "risk of intrusion . . . low," it reasoned that "[t]he important detail here is that [the plaintiff's] claim would interfere with a vastly different part of prison operations—housing assignments instead of medical care—meaning that his claim

threatens to intrude in ways *Carlson* did not contemplate." *Sargeant*, 87 F.4th at 367.

The Court also reasoned that special factors precluded recognition of a novel *Bivens* remedy. The Court held that the availability of an alternative remedial scheme was a special factor, namely, the administrative remedy program for inmate grievances established in the Prison Litigation Reform Act. *Sargeant*, 87 F.4th at 368. Agreeing with the Fourth and Ninth Circuits that a failure-to-protect claim was foreclosed, the Court concluded that such an "outcome is unavoidable after *Egbert*." *Id.* (first citing *Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022); and then citing *Bulger v. Hurwitz*, 62 F.4th 127, 140-41 (4th Cir. 2023)). The Court rejected the plaintiff's arguments that the Prison Litigation Reform Act did not expressly foreclose a *Bivens* remedy and that the administrative remedy program would not redress the plaintiff's claims once he moved to a new facility. In doing so, the Court explained that those arguments challenge "whether a *Bivens* action could work alongside an existing scheme or whether the alternative remedy completely compensates the

victim," which "run headfirst" into the Supreme Court's contrary instructions. *Id.*[4]

> **B. The District Court Properly Declined to Extend *Bivens* Liability for Plaintiff's Failure-to-Protect Claims.**

1. Plaintiff's failure-to-protect claims are foreclosed by Circuit precedent. Plaintiff offers no valid reason to depart from *Sargeant*. *See* Opening Br. 28-29. By its terms, *Sargeant* forecloses a *Bivens* claim based on allegations "that a prison official failed to protect [an inmate] from violent attacks by his cellmates," precisely the claim that plaintiff seeks to bring in this case. *Sargeant*, 87 F.4th at 360. In all material respects, his failure-to-protect claim is on all fours with *Sargeant*. While he erroneously contends that his failure-to-protect claim would not implicate housing policies in the same way as the claim in *Sargeant*, he fails to offer any explanation for his contention. *See* Opening Br. 28. Indeed, his *Bivens* claim necessarily challenges the decision to house

---

[4] This Court observed in *Sargeant* that the Third Circuit, unlike the Fourth and Ninth Circuits, had held that prisoner failure-to-protect claims arose in an existing *Bivens* context. *See* 87 F.4th at 364-65. The Third Circuit has since overruled that precedent in light of *Egbert* and held that "no constitutional claim lies against federal officials who fail to protect a prisoner from the violence of other inmates." *Fisher v. Hollingsworth*, 115 F.4th 197, 208 (3d Cir. 2024).

him with a particular inmate as well as the policies and procedures associated with addressing any disputes arising from those assignments.

2. Even if plaintiff could point to some distinction with *Sargeant*, a *Bivens* remedy is not available for plaintiff's failure-to-protect claim under the two-step *Abbasi* framework.

First, plaintiff's failure-to-protect claim arises in a new *Bivens* context. The Supreme Court has explained that the new context inquiry is "broad." *Hernandez v. Mesa*, 589 U.S. 93, 102 (2020). Thus, even if differences between plaintiff's case and *Carlson* are "perhaps small, at least in practical terms," the inquiry is "easily satisfied." *Abbasi*, 582 U.S. at 147-49 ("Yet even a modest extension is still an extension."). And courts look to a number of factors to determine whether a context is novel, including the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to a problem or emergency, the statutory or other legal mandate under which the officer was operating, and the risk of disruptive intrusion by the judiciary into the functioning of other branches of government. *Id.* at 139-40.

Plaintiff's failure-to-protect claims focus on the administration of prison housing and inmate placement—a factual context distinct from the three previously recognized contexts at issue in *Carlson*. That new context would require scrutiny of new categories of conduct and a new category of defendants, namely BOP employees involved in making housing decisions and managing the agency's housing system. Because plaintiff's claim is directed against a correctional counselor and psychologist who were not directly involved in housing decisions, his claim would present even more intrusion into BOP's housing decisions than that presented in *Sargeant*. And he seeks to recover under a legal theory—failure to protect—that was not at issue in *Carlson*. *See also Bulger*, 62 F.4th at 138 (recognizing that an inmate's failure-to-protect claims would "exceed the bounds of liability the Court's previous *Bivens* actions established, implicating 'not only the scope of [each official's] responsibilities and duties' but also the organizational policies, administrative decisions, and economic concerns inextricably tied to" the determinations at issue (alteration in original)).

Plaintiff erroneously argues that his claim raises the same "policy balance struck in *Carlson*," which he asserts is "how should prison

officials respond to situations with knowledge that inaction will lead to severe harm against a prisoner." Opening Br. 28-29. Plaintiff's characterization is far too general and not consistent with the Supreme Court's instruction that even small differences constitute a new context because "even a modest extension is still an extension." *Abbasi*, 582 U.S. at 147; *see also Bulger*, 62 F.4th at 138 ("[E]ven claims challenging the adequacy of medical care may involve the same 'right and . . . mechanism of injury' as in *Carlson* but still present 'different' contexts." (alteration in original)); *Fisher*, 115 F.4th at 206 (same). Because the factual context in this case differs "in a meaningful way" from *Bivens, Davis,* and *Carlson, see Abbasi*, 582 U.S. at 139, it arises in a new context.

Second, multiple special factors preclude the extension of *Bivens* liability to plaintiff's failure-to-protect claim.

Perhaps most notably, there are "alternative remedial structure[s]" that can deter and address the kinds of misconduct that plaintiff alleges. *Abbasi*, 582 U.S. at 137. The Supreme Court has held that the existence of "any alternative, existing process for protecting the injured party's interest" can counsel hesitation, *id.* (alteration omitted) (quoting

*Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)), even when the alternatives may not enable the particular plaintiff to obtain money damages or similarly effective relief. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367, 372 (1983) (declining to create a *Bivens* remedy even though alternative processes "were not as effective as an individual damages remedy and did not fully compensate [the plaintiff] for the harm he suffered" (footnote omitted)).

Congress has provided alternative methods for relief that foreclose a *Bivens* remedy here. *See Abbasi*, 582 U.S. at 140. Congress has expressly approved claims for injunctive relief for federal prisoners. *See* 18 U.S.C. § 3626 (providing civil action remedies with respect to prison conditions). Plaintiff therefore could have sought a court order requiring BOP defendants in their official capacity to remove plaintiff from the cellmate. *Cf. Abbasi*, 582 U.S. at 145 (noting how habeas relief, "if necessity required its use, would have provided a faster and more direct route to relief than a suit for money damages"). And, aside from a court order, plaintiff could have lodged complaints of misconduct through BOP's administrative scheme, the Department of Justice's Office of Inspector General, or BOP's internal affairs component. *See*

*Egbert*, 596 U.S. at 498 ("And, again, the question whether a given remedy is adequate is a legislative determination that must be left to Congress, not the federal courts.").

In addition, Congress's frequent legislative action in the regulation of federal prisons suggests that the judiciary should refrain from further intrusion. *See* Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, tit. VIII, §§ 801-810, 110 Stat. 1321, 1321-66 to 1321-77 (1996)); *see also* Civil Rights of Institutionalized Persons Act, Pub. L. No. 96-247, 94 Stat. 349 (1980) (authorizing the Attorney General to institute a civil action for equitable relief against state officials for constitutional violations); Prison Rape Elimination Act of 2003, 34 U.S.C. §§ 30301-30309 (instructing the Attorney General to promulgate regulations for preventing, investigating, and punishing prison rape); Federal Prison Oversight Act, H.R. 3019, 118th Cong. (2024).  Congress has paid extensive attention to prison administration and prison conditions, and the area is laden with policy considerations that the political branches are better suited to resolve. *See Turner v. Safley*, 482 U.S. 78, 84-85 (1987) ("Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of

which are peculiarly within the province of the legislative and executive

branches of government.").

C.     The District Court Correctly Concluded that *Bivens*
       Liability Is Not Available for Plaintiff's Novel
       Inadequate Medical Care Claims.

The district court also correctly reasoned that plaintiff's inadequate

medical care claims present a new context and that special factors

precluded recognition of his novel claims.  D.Ct. Op., R. 304 at 19-20.

1.  Plaintiff's inadequate medical care claims are meaningfully

different in a number of respects from the allegations in *Carlson*.  The

differences between the claims in *Carlson* regarding individual BOP

employees' discrete acts of malfeasance by providing contra-indicated

treatment and failing to provide emergency care and plaintiff's claims

regarding failure to report and secure medical care are significant.

Plaintiff's claims would extend liability to new categories of

defendants and to new mechanisms of injury.  *Hernandez*, 589 U.S. at

103 ("A claim may arise in a new context even if it is based on the same

constitutional provision as a claim in a case in which a damages remedy

was previously recognized.").  Plaintiff has sued two psychologists, who

do not provide medical or dental care; three nurses, who have a limited

ability to provide medical care and do not provide dental care; and a correctional counselor and lieutenant, who have no ability to provide medical, psychological, or dental care, for asserted failures to provide medical, dental, and psychological care.  Plaintiff's deliberate indifference claims are based not on assertions that the individual defendants themselves failed to treat his injuries but that they failed to report his requests and secure treatment from medical providers.  *See* D.Ct. Screening Order, R. 143, at 3.  Extending liability in this way to a novel legal theory not at issue in *Carlson* would expand *Bivens* into a new context.

Indeed, even before *Abbasi* and *Egbert*, this Court recognized that *Bivens* liability did not extend to such claims.  In *Estate of Miller by Chassie v. Marberry*, a federal prisoner sued a guard and warden who allegedly failed to heed his warnings that he needed a lower bunk for medical reasons, causing him serious injury.  847 F.3d 425, 428 (7th Cir. 2017).  As this Court explained, "the prison's medical department"—not those individuals—was "responsible for deciding who ha[d] a medical need for a lower bunk."  847 F.3d at 426.  Although the plaintiff warned defendants that he had been injured in falls from

upper bunks in the past, this Court rejected the notion that "anyone told" about a problem "must fix" it "on pain of damages." *Id.* at 427. "Liability under *Bivens* is personal rather than vicarious," and "inaction following receipt of a complaint about someone else's conduct is not a source of liability." *Id.* at 428-29.

Likewise here, plaintiff seeks individual-capacity damages from BOP personnel who undisputedly were not themselves situated to address his asserted medical needs. Plaintiff's effort to hold them personally responsible on the theory that the needs allegedly went unsatisfied by BOP as a whole is distinct from the individual acts of malfeasance in *Carlson.* And it implicates the sorts of differences that the Supreme Court has emphasized render a context new. *See Rowland v. Matevousian*, No. 23-1343, 2024 WL 4821774, at *4 (10th Cir. Nov. 19, 2024) (holding that inmate's claims for inadequate medical care relating to treatment for a hernia arose in a new context). Plaintiff's claims would intrude and upend BOP's reporting structure, organizational management, and systemic management of medical care—particularly in the sensitive area of sexual assault—and thus necessarily implicate the "risk of disruptive intrusion by the Judiciary" into prison functions.

Like the failure-to-protect claim in *Sargeant*, plaintiff's claims implicate "a sensitive mixture of things [courts] are ill-positioned to assess." 87 F.4th at 367. And holding individual BOP employees personally liable for injuries outside their own spheres of responsibility could have "systemwide" consequences. *Id.* Plaintiff's claims would therefore "exceed the bounds of liability the Court's previous *Bivens* actions established, implicating not only the scope of [each official's] responsibilities and duties but also the organizational policies, [and] administrative decisions" on which BOP's fulfillment of its mission is premised. *Bulger*, 62 F.4th at 138 (first alteration in original) (quotation marks omitted).

2. The district court correctly reasoned that special factors preclude extending *Bivens* liability. While it is clear that the presence of just one special factor alone would be a sufficient reason not to extend *Bivens*, here there are multiple special factors that—"[t]aken together" and considered in the aggregate—strongly counsel against expanding *Bivens* to include plaintiff's claim. *Chappell v. Wallace*, 462 U.S. 296, 304 (1983).

First, before a court takes the disfavored and most unusual step of extending *Bivens*, it must evaluate "policy considerations . . . at least as broad as the range . . . a legislature would consider." *Egbert*, 596 U.S. at 491 (alterations in original) (quotation marks omitted) (noting such considerations "include 'economic and governmental concerns,' 'administrative costs,' and the 'impact on governmental operations systemwide'"). Here, before authorizing a *Bivens* remedy for plaintiff's claims regarding the medical care he received for his injuries, the court must consider the "'systemwide' consequences" of doing so. *Id.* at 493 ("Even in a particular case, a court likely cannot predict the 'systemwide' consequences of recognizing a cause of action under *Bivens*. That uncertainty alone is a special factor that forecloses relief." (citation omitted)). And this Court must also consider "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Id.* at 499 (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)).

To insert courts into disagreements about the roles of various actors involved in reporting and administering medical treatment would create a serious risk of disruptive intrusion into the complexities of

38

providing medical care in the prison setting, a responsibility Congress has delegated to the Executive Branch. 18 U.S.C. § 3621(i)(1) (charging BOP with ensuring "each prisoner . . . has access to necessary medical care, mental health care, and medicine"). Undoubtedly, Congress is far better positioned to consider the consequences and costs of remedies that permit judicial second-guessing of the ways in which BOP provides medical care—both within and outside of its facilities—to the approximately 150,000 inmates in its care. *See* BOP, *About Our Agency*, *supra*.

Second, the district court correctly held that the availability of alternative administrative remedies, including BOP's administrative remedy program, precluded recognition of plaintiff's novel claim for damages. *See* D.Ct. Op., R. 304 at 11. For the reasons explained *supra* pp. 32-33, that special factor is sufficient reason to conclude that courts should not extend *Bivens*. Plaintiff's arguments to the contrary (Opening Br. 33-36) are inconsistent with the precedents of this Court and the Supreme Court. As *Sargeant* explained, the Supreme Court has instructed courts "not to consider whether a *Bivens* action could work alongside an existing scheme or whether the alternative remedy

completely compensates the victim." 87 F.4th at 368. Moreover, in *Sargeant*, this Court expressly rejected the argument that the Prison Litigation Reform Act does not foreclose a *Bivens* claim or that a particular remedial scheme would not redress an inmate's grievances after he was transferred to another facility. Opening Br. 34-35; *Sargeant*, 87 F.4th at 368. The same reasoning applies here.

Finally, the sustained Congressional attention in the area of prison administration and regulation, *supra* pp. 33-34, is a special factor precluding recognition of a *Bivens* remedy for plaintiff's claims.

## II. The District Court Correctly Held that Defendants Were Entitled to Qualified Immunity on the Medical Care Claims.

Even assuming plaintiff could establish a *Bivens* cause of action, this Court should affirm the judgment below. The district court correctly held that the individual defendants were entitled to qualified immunity. Qualified immunity is an affirmative defense and, once a defendant raises it, the plaintiff carries the burden of defeating both of its elements. *See Smith v. Finkley*, 10 F.4th 725, 737 (7th Cir. 2021); *Rabin v. Flynn*, 725 F.3d 628, 632 (7th Cir. 2013); *Spiegel v. Cortese*,

196 F.3d 717, 723 (7th Cir. 1999).  Plaintiff has not carried that burden here.

A.   Plaintiff's Failure to Satisfy His Burden on Qualified Immunity Should Not Be Excused.

The district court correctly concluded that plaintiff affirmatively waived a challenge to defendants' entitlement to qualified immunity by failing to contest qualified immunity, and there is no basis for excuse of that waiver to allow him to present arguments for the first time on appeal.  As the district court explained, "[o]nce Defendants asserted their qualified immunity defense, [plaintiff] bore the burden of defeating it."  D.Ct. Op., R. 304 at 19.  By not addressing the qualified immunity argument in district court, plaintiff failed to satisfy his burden and therefore waived any challenge to defendants' assertion of qualified immunity on appeal.  And even if plaintiff were deemed to have forfeited, rather than waived, the argument, it still would not be appropriate for review.

1.  This Court has explained that "it is axiomatic that arguments not raised below are waived on appeal."  *Oates v. Discovery Zone*, 116 F.3d 1161, 1168 (7th Cir. 1997) (quotation marks omitted).  Plaintiff acknowledges that he failed to contest defendants' claims to qualified

41

immunity during the district court proceedings. *See* Opening Br. 37. Indeed, after defendants filed their motion for summary judgment asserting qualified immunity, plaintiff's counsel filed a lengthy opposition to the motion that did not contest qualified immunity. The district court then gave plaintiff 16 days to determine whether he wished to proceed with his counsel's summary judgment response or file his own response, pro se. Order, R. 295, at 2. Plaintiff then affirmatively "verified that he wishes to proceed with recruited counsel's response" to the court. Order, R. 302, at 1. Accordingly, he is bound by the arguments made in district court.

This Court has consistently held that arguments waived in district court cannot be raised for the first time on appeal. In *Henry v. Hulett*, a class of female inmates alleged that various state prison officials violated their Fourth and Eighth Amendment rights by subjecting them to strip searches. 969 F.3d 769, 773-74 (7th Cir. 2020) (en banc). The defendants moved for summary judgment but failed to affirmatively assert a qualified immunity defense. *Id.* at 775. The district court granted summary judgment for the defendants on the plaintiffs' Fourth Amendment claims. *Id.* at 776. On appeal, this Court rejected the

defendants' claim of qualified immunity, finding that they could not raise the defense for the first time on appeal when they failed to raise it in their response to the plaintiff's motion for summary judgment before the district court. *Id.* at 785; *see also Ziccarelli v. Dart*, 35 F.4th 1079, 1084 n.3 (7th Cir. 2022) (holding that a plaintiff's failure to include an argument in his response in opposition to a defendant's summary judgment motion constituted a waiver of his ability to make that argument on appeal).

Plaintiff cannot evade the application of the waiver rule by pointing to his counsel's decision not to contest qualified immunity. The waiver rule reflects the principle that "a civil litigant 'should be bound by his counsel's actions.'" *Henry*, 969 F.3d at 786 (quoting *SEC v. Yang*, 795 F.3d 674, 679 (7th Cir. 2015) (quoting *Deppe v. Tripp*, 863 F.2d 1356, 1360 (7th Cir. 1988))). In this case, the district court was particularly careful to ensure that counsel's actions reflected plaintiff's wishes, giving plaintiff time to confirm that he wanted to proceed with his counsel's opposition to summary judgment. Plaintiff confirmed that he did.

It is particularly clear that plaintiff "had no excuse for neglecting to argue" against qualified immunity here: in seeking to establish other propositions, his district court filing relied on cases which directly address qualified immunity in some detail. *Teumer v. General Motors Corp.*, 34 F.3d 542, 546 (7th Cir. 1994) ("The failure to draw the district court's attention to an applicable legal theory waives pursuit of that theory" on appeal, particularly when the plaintiff cited controlling case law "prominently below for other propositions."). Plaintiff points to no case in which an affirmative waiver was excused under similar circumstances.

2. Even if this Court views plaintiff's failure to contest qualified immunity as a forfeiture, his forfeiture should not be excused. In those rare cases where a party's failure to raise an argument is best classified as a forfeiture, this court's ability to review for plain error in civil cases is "severely constricted." *Henry*, 969 F.3d at 786 (quoting *Yang*, 795 F.3d at 679) (citing *CNH Indus. Am. LLC v. Jones Lang LaSalle Ams., Inc.*, 882 F.3d 692, 705 (7th Cir. 2018)). Review of a forfeited claim is available in rare situations and under the plain error standard, "where a party can demonstrate that: (1) exceptional circumstances exist; (2)

substantial rights are affected; and (3) a miscarriage of justice will occur if plain error review is not applied." *Id.* (quotation marks omitted).  Plaintiff fails to satisfy each of these factors.

First, plaintiff has not demonstrated exceptional circumstances. This Court has explained that "exceptional circumstances" include those in which a decision "has the potential to affect large numbers of people beyond the parties to this case." *Hacker v. Dart*, 62 F.4th 1073, 1080, 1082 (7th Cir. 2023) (first quoting *Henry*, 969 F.3d at 786; and then quoting *CNH Indus. Am. LLC*, 882 F.3d at 705).  An example is "a statutory-construction question that has the potential to affect large numbers of people beyond the parties [in a given] case." *CNH Indus. Am. LLC*, 882 F.3d at 705.  This case does not involve a statutory-construction question and the resolution of this case would not "resolve issues of great significance for other parties." *Hacker*, 62 F.4th at 1082. To the contrary, the validity of defendants' invocation of qualified immunity is highly case-specific and unlikely to affect other parties. Plaintiff argues that his decision to either submit a response to the motion for summary judgment pro se or file the response prepared by counsel amounts to exceptional circumstances.  Opening Br. 45.  The

decision about whether to continue with counseled representation or litigate pro se is routine, not exceptional. Excusing forfeiture in those circumstances would significantly expand the exception beyond the limits this Court has consistently set, allowing litigation in the first instance in routine cases. This Court has never excused forfeiture because a plaintiff faced such a decision.

Second, plaintiff has not shown that his substantial rights are affected. This prong of the plain error inquiry "asks whether the alleged error prejudiced the forfeiting party." *Hacker*, 62 F.4th at 1082. Plaintiff was not prejudiced by the forfeiture. Rather, plaintiff concedes that even if he had contested defendants' claim to qualified immunity at summary judgment, the district court would have dismissed his medical-care claims on other grounds. Opening Br. 45. As explained, *supra* Part I, the district court correctly concluded that there is no *Bivens* remedy available for his novel claims. Under 28 U.S.C. § 1915(e)(2)(B)(ii), the district court would have been required to dismiss his claim, regardless of whether defendants were entitled to qualified immunity. Accordingly, even if the district court agreed that defendants were not entitled to qualified immunity, the district court

would have granted summary judgment to defendants on an issue plaintiff did fully brief.

Finally, plaintiff fails to establish that a miscarriage of justice will occur if his forfeiture is not excused. This Court examines the totality of the circumstances of a case in deciding whether a miscarriage of justice will occur without review of the forfeited argument. *Hacker*, 62 F.4th at 1083. Plaintiff argues that he should be permitted to contest qualified immunity for the first time on appeal because counsel was appointed and plaintiff himself was "unable to choose his [appointed] counsel." Opening Br. 46. Those considerations do not suggest it is "in the interests of justice," Order, July 2, 2024, to allow him to raise a forfeited argument on appeal. As he acknowledges, he is not entitled to counsel in a civil case, *see* Opening Br. 46, and the district court appointed counsel after plaintiff's repeated requests. Plaintiff's dissatisfaction with appointed counsel's performance is not a justification for allowing a plaintiff to litigate anew his case on appeal.

B.  The District Court's Conclusion that Defendants Are
    Entitled to Qualified Immunity Was Not Plain Error,
    Even If the Issue Were Properly Preserved.

Public officials are immune from civil liability "insofar as their

conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982).  To overcome that presumption, a

plaintiff must show that the individual defendants (1) "violated a

statutory or constitutional right" that was (2) "clearly established at the

time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735

(2011) (quotation marks omitted).  Plaintiff's argument fails at both

steps under any standard of review but certainly under the plain error

standard.

First, plaintiff failed to show that the alleged misconduct violated his

Eighth Amendment rights.  To state an Eighth Amendment claim for

deliberate indifference to medical needs, plaintiff must show that: (1) as

an objective matter, he was deprived of care for a "sufficiently serious"

medical need and (2) as a subjective matter, the individual defendants

deliberately disregarded that need.  *Farmer v. Brennan*, 511 U.S. 825,

834 (1994) (quotation marks omitted); *see also Arnett v. Webster*, 658

F.3d 742, 750 (7th Cir. 2011).  Plaintiff must not only establish the two elements required for such claims but must also show that each defendant was personally involved in the allegedly unconstitutional actions.  *See Arnett*, 658 F.3d at 757; *Del Raine v. Williford*, 32 F.3d 1024, 1047 (7th Cir. 1994).  Even assuming that plaintiff has satisfied the objective component of an Eighth Amendment deliberate-indifference violation, plaintiff has not shown that defendants' actions met the subjective component or that they were personally involved in the allegedly unconstitutional conduct.

To meet this subjective prong, plaintiff must show that an official both was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and actually drew that inference.  *Farmer*, 511 U.S. at 837.  To that end, "[n]on-medical defendants . . . can rely on the expertise of medical personnel."  *Arnett*, 658 F.3d at 755.  Therefore, when a "prisoner is under the care of medical experts, a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."  *Id.*; *see also Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life

among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.").

Plaintiff's brief provides no basis for concluding that the individual defendants were not entitled to qualified immunity, much less that the district court committed plain error.  *See* Opening Br. 50-52.  His sole argument to challenge qualified immunity is that "[a]t different points in time, Thomas had frequently reported his injuries" to each of the individual defendants and alleges that defendants "ignor[ed] or essentially 'shrugg[ed] off'" these requests."  Opening Br. 51-52 (citing factual allegations in Opening Br. 5-11).  None of his allegations have shown that defendants were deliberately indifferent to his medical needs.

> 1. Plaintiff has failed to show that defendants were deliberately indifferent to his medical needs.

a.  Plaintiff has not shown that his correctional counselor Joslyn and Special Investigative Services Lieutenant Baker were deliberately indifferent to his medical needs or that that they were personally involved in the alleged deprivations.  He alleges that on November 29 or 30, 2017, he reported his injuries to correctional counselor Joslyn and

requested medical assistance. Opening Br. 10. Similarly, he contends that on January 1, 2018, he reported the prior assaults by his cellmate as well as injuries from the most recent assault to Special Investigative Services Lieutenant Baker during Baker's investigation into the assaults. *Id.* He suggests then that these defendants "ignor[ed]" his requests for medical care and thus are liable for what he contends was the inadequate or lack of medical care he received following the assaults. *See* Opening Br. 51.

First, neither of these two non-medical staff members, a correctional counselor and an investigator, were authorized to provide the medical or psychological care plaintiff requested and thus cannot be held liable for the asserted failure to provide the requested care. As this Court has explained, reporting a medical need or injury to non-medical personnel is not sufficient to establish non-medical personnel's liability for a purported failure to treat that injury. *Marberry*, 847 F.3d at 427-29 (cases holding that "inaction following receipt of a complaint about someone else's conduct is not a source of [*Bivens*] liability" prevented liability against non-medical prison personal for "brush[ing] off [an inmate's] complaints, leaving them to be handled through the chain of

command"); *see also Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012); *Burks v. Raemisch*, 555 F.3d 592 (7th Cir. 2009).

Moreover, these non-medical personnel were entitled to rely on medical providers and trust that plaintiff was in the care of their expertise. *Arnett*, 658 F.3d at 755. Plaintiff's medical records reflect that he was receiving both medical and psychological treatment throughout his incarceration at FCC Terre Haute, including biweekly injections; several encounters with psychology; psychological reviews every 30 days; an outpatient visit to a medical specialist and return evaluation by a physician in mid-December (which noted no injuries on examination); nursing assessments on January 1 and 18, 2018; and testing for infectious diseases. Thus, as non-providers, Special Investigative Services Lieutenant Baker and correctional counselor Joslyn were entitled to rely on the judgment of the medical and psychological providers who were seeing and treating plaintiff.

b. Plaintiff has also failed to show that defendants providing psychological care were deliberately indifferent to his medical needs. Drs. Carmicheal and Conner are psychologists who worked at FCC Terre Haute; neither psychologist was a medical doctor nor were they

responsible for providing medical or dental treatment to inmates or authorized or trained to do so. Both psychologists performed assessments and follow-up for suicide risk, and Dr. Conner provided psychological assistance during a Special Investigative Services investigation. Neither psychologist was involved in assessment or treatment of his physical injuries.

Dr. Carmicheal conducted a suicide risk assessment, concluding that plaintiff's suicide risk was low, and recommended that he be seen for a follow up contact within the next two weeks. Carmicheal Dep., R. 274-5, at 16-18, 45-47; Suicide Risk Assessment, R. 274-7. Dr. Conner similarly assisted in the Special Investigative Services investigation of plaintiff's complaints of assault and conducted follow-up from the suicide risk assessment, during which plaintiff did not exhibit signs of suicidal intent or psychosis. Dr. Conner recommended that plaintiff be seen for additional follow up later. Plaintiff cannot demonstrate that these encounters for psychological treatment were themselves constitutionally deficient. His dissatisfaction or disagreement with psychological care does not amount to deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010) ("Neither medical

malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment.").

Nor has he shown that the psychologists had some constitutional or other obligation to treat his medical and dental injuries. Like the non-medical defendants, these psychologists were entitled to rely on and trust that he was in the care of medical providers. *Arnett*, 658 F.3d at 755.

c. Plaintiff has failed to show that the nurses who examined him were deliberately indifferent to his medical needs. Nurses Norris, Pointer, and Worthington were nurses at FCC Terre Haute and could only provide a limited amount of care. In that role, nurses do not diagnose conditions, refer inmates to specialists, or provide any psychological or dental care. *See* Norris Decl., R. 269-17, ¶ 5; Pointer Decl., R. 269-18, ¶ 6; Worthington Decl., R. 269-19, ¶ 5; Wilson Decl., R. 269-20, ¶ 8; *cf. Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012) (noting that prison officials cannot be liable under Eighth Amendment if "remedial step was not within their power").

While plaintiff's medical records reflect that Nurse Norris conducted an assessment of plaintiff, plaintiff contends that he never interacted with, met, or requested medical treatment from Nurse Norris. *See* Thomas Dep., R. 274-1, at 73, 124-25. His opening brief makes no mention of Nurse Norris by name and raises no argument to explain how Nurse Norris could have been aware of his serious medical needs or been culpable in failing to respond to those needs. *See* Opening Br. 49-50; *Arnett*, 658 F.3d at 757 (requiring individual participation and involvement to impose *Bivens* liability on a defendant).

Nurses Worthington and Pointer each only evaluated plaintiff once, weeks after he was separated from his cellmate, after any emergency had ended, when he was not experiencing any serious medical need. Both nurses examined plaintiff in January 2018 after the initiation of the Prison Rape Elimination Act protocol. Plaintiff appears to disagree with both nurses' assessment of his medical needs, but a disagreement with a medical provider does not state a cognizable Eighth Amendment claim. *See, e.g.*, *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). Even if plaintiff had alleged that the nurses' assessments were negligent, that would be insufficient to impose liability under the

Eighth Amendment. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Arnett*, 658 F.3d at 758; *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Plaintiff also objects to the manner in which Nurse Pointer conducted the examination, *see* Opening Br. 11 (noting that other correctional officers were present), but does not explain why the examination would constitute deliberate indifference to his medical needs.

   2.   Plaintiff has not shown that any of the
        defendants violated clearly established law.

Plaintiff points to no case establishing that either BOP's course of treatment writ large or the individual defendants' own conduct violated a clearly established right, and the Court can affirm the district court's qualified immunity ruling or, indeed, the judgment on that basis. For the reasons explained, *supra* pp. 34-37, *Carlson* is distinguishable from this case and, in any event, certainly does not clearly prescribe a constitutional course of conduct for treatment of plaintiff's injuries or establish that defendants violated the Eighth Amendment by deferring treatment to those responsible for his medical and dental care.

Plaintiff's assertions that it is well-established that "deliberate indifference to a prisoner's serious illness or injury states a cause of

action under § 1983 for violation of the Eighth Amendment," Opening Br. 53-54, are insufficient to overcome an assertion of qualified immunity. Rather, plaintiff is required "to produce a case clearly establish[ing] [the right] in a particularized sense, rather than in an abstract or general sense." *Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013) (alterations in original) (quotation marks omitted). Plaintiff cannot defeat an assertion of qualified immunity by claiming that defendants' constitutional obligations were "obvious." Opening Br. 52. Rather, "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018); *see also Mullenix v. Luna*, 577 U.S. 7, 18 (2015) (per curiam) (an established precedent must speak "clearly to the specific circumstances").

None of the cases cited in plaintiff's Opening Brief (at 53-54) holding that delays in treatment can give rise to liability for deliberate indifference establish that these defendants had a clearly defined constitutional obligation to treat plaintiff or direct and secure medical or dental treatment for him. In *Conley v. Birch*, 796 F.3d 742 (7th Cir.

2015), this Court concluded that a treating physician could be liable for deliberate indifference after the examining nurse reported to the physician that an inmate's hand might be fractured, but the physician delayed ordering an x-ray, if a jury concluded that the physician in fact knew the hand was fractured and declined to treat the fracture appropriately. *Id.* at 747-49. Here, by contrast, none of defendants were responsible for treating plaintiff's physical or dental injuries and declined or delayed treatment. Similarly, in *Lewis v. McLean*, 864 F.3d 556 (7th Cir. 2017), this Court held that a prison security supervisor and duty nurse were not entitled to qualified immunity when they delayed a response inmate's request for treatment by insisting that the inmate, who was immobilized, walk to the cell door rather than ordering an emergency extraction. *Id.* at 559, 563-66. Nothing in that case prescribes defendants' duties in response to plaintiff's reports of physical and dental injuries.

Plaintiff has cited no case to support his view that the non-medical defendants violated clearly established law in relying on medical providers to address plaintiff's medical and dental injuries; that the psychology assessments that he was provided were constitutionally

deficient; or that the two examining nurses (or the third nurse he contends never examined him) provided assessments that violated the Eighth Amendment.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

SARAH CARROLL

*s/ Jaynie Lilley*

JAYNIE LILLEY
*Attorneys, Appellate Staff*
*Civil Division, Room 7321*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3542*
*jaynie.lilley2@usdoj.gov*

NOVEMBER 2024

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,245 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ Jaynie Lilley*
Jaynie Lilley